IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville November 17, 2015

**JORDAN CURRY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-14-322    Roy B. Morgan Jr., Judge**

_____

**No. W2015-00709-CCA-R3-PC  -  Filed December 17, 2015**

_____

The Petitioner, Jordan Curry, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his convictions for especially aggravated kidnapping, aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, and evading arrest and his effective forty-four-year sentence. The Petitioner contends that the post-conviction court erred by denying relief on his ineffective assistance of counsel claim. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Christie Hopper, Jackson, Tennessee, for the appellant, Jordan Curry.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Jerry Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from an incident in which the Petitioner and two codefendants, Grico Clark and Deangelo White, kidnapped and robbed two individuals. This court affirmed the Petitioner's convictions on appeal and summarized the facts of the case as follows:

>        According to the evidence presented at trial, Shannell Henning and Leon Jackson, the victims, went to McDonald's in the early morning hours of July 11, 2011. When they returned to Ms. Henning's apartment at 1206 Parkwood Trace in Jackson, Tennessee at around 2:00 a.m., they were

approached by three men, at least two of whom were armed with guns. One of the men informed Ms. Henning and Mr. Jackson at gunpoint that they were being robbed. Ms. Henning dropped her purse, keys, and food. She was so scared for her life that she actually began gasping for air. The men ordered the victims to walk toward their apartment or they would be killed.

Ms. Henning walked toward the apartment, flanked by Curry and Clark. White followed them. When they reached the door to the apartment, Curry handed her the keys to open the door. The apartment was equipped with an alarm. The alarm was activated but did not go off. Curry told Ms. Henning to "deactivate the alarm." She complied.

As the men entered the apartment, they ordered Ms. Henning to sit on the floor. Mr. Jackson was taken to the kitchen where the men took his money, and Curry restrained him by duct-taping him to a kitchen chair. White and Clark went to the bedrooms to look for more money.

After returning empty handed, the men discussed their next plan. Curry stated that he would kill Ms. Henning. At that point, Ms. Henning felt trapped and was panicked. She felt the need to formulate some type of plan to get out of the apartment to safety. The men had already taken her purse, which contained an EBT card and about $500 in cash. She tried to convince the men that she had more money and that it was located down the street in another apartment. Curry did not believe Ms. Henning; Clark and White wanted to see if there was more money.

Clark and White told Ms. Henning to "[g]et up bitch. Let's go get [the money]." They took Ms. Henning out of the apartment at gunpoint, escorting her to her car. Ms. Henning drove the car while Clark sat in the passenger seat and White sat in the back seat. As they drove to another apartment complex about five minutes away, Ms. Henning was continually held at gunpoint. At some point during the drive, White got a telephone call from another male. After the call, White told Clark that they were not supposed to leave the apartment.

When they arrived at the apartment, White and Clark gave Ms. Henning five minutes to go inside and return with money or they would "shoot up" the apartment. Ms. Henning pounded on the door and was allowed inside, where she immediately called the police. She watched outside and saw police arrive soon thereafter. Clark and White fled from her car on foot. Both Clark and White were eventually apprehended by police after a foot chase. They located

an automatic pistol and a ten dollar bill in the area where Clark and White were running. White was found with about twenty-five grams of marijuana in his pocket.

While Ms. Henning drove Clark and White to the other apartment, Curry stayed behind with Mr. Jackson. Curry continued to search for money and when he found none, hit Mr. Jackson in the head.

About thirty minutes after Clark and White left with Ms. Henning, Curry got a phone call. After the call, Curry was frantic, looking for a way out of the apartment. He actually asked Mr. Jackson to "help him out." He eventually tried to escape. Mr. Jackson could hear police ordering Curry to the ground. After a short chase, Curry was apprehended. He was armed with an assault rifle, complete with a clip containing extra rounds. Curry was wearing latex gloves and had about $550 in cash and Ms. Henning's EBT card in his possession. Mr. Jackson was found duct-taped to a chair inside the apartment. He had a large knot on his head.

At trial, both Mr. Jackson and Ms. Henning were able to identify Clark, White, and Curry.

. . . .

The jury convicted Clark and Curry with two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, and one count of evading arrest.

. . . .

At a sentencing hearing, Clark and Curry were sentenced to twenty-two years for each count of especially aggravated kidnapping, ten years for each count of aggravated robbery, five years for aggravated burglary, six years for possession of a firearm during the commission of a dangerous felony, and eleven months and twenty-nine days. The trial court ordered the aggravated burglary sentence to run consecutively to the possession of a firearm sentence, but concurrently to the remaining sentences. The trial court ordered the two, twenty-two-year sentences for especially aggravated kidnapping to run consecutively to each other and concurrently to the remaining sentences, for a total effective sentence of forty-four years.

*State v. Grico Clark, Jordan Curry and Deangelo White*, No. W2012-02666-CCA-R3-CD, 2014 WL 505501, at *2-4 (Tenn. Crim. App. Feb. 7, 2014), *perm. app. denied* (Tenn. June 20, 2014).

The Petitioner filed a petition for post-conviction relief, alleging multiple grounds of the ineffective assistance of counsel. He argued counsel provided ineffective assistance by failing to communicate a plea offer, failing to inform him adequately of his right to testify, and failing to file a motion to sever his trial from that of his codefendants.

At the post-conviction hearing, the Petitioner testified that before the trial, he was represented by two attorneys. He said that his first attorney "refused to do anything that I was asking in my defense," that there were "issues . . . about reduced charges and filing motions," and that the Petitioner requested another attorney. The Petitioner stated that before the hearing on his request, his first attorney told him she "was moving to a different division" and that as a result, the Petitioner withdrew the request. The Petitioner stated that his first attorney did not file any motions on his behalf.

The Petitioner testified that after trial counsel was appointed, they discussed his case and that counsel did not honor the Petitioner's wishes regarding "things for my defense." The Petitioner remembered that the trial court granted counsel's motion in limine but did not remember whether counsel filed additional motions. The Petitioner said that one or two days before the trial, he and counsel discussed a plea offer from the State, whereby the Petitioner would serve a twenty-year sentence. The Petitioner rejected the offer.

The Petitioner testified that after the trial, he found documentation of a previous plea offer in the discovery file and said that trial counsel never communicated the offer to him. A copy of a January 20, 2012 fax from Assistant District Attorney Jody Pickens addressed to Petitioner's first attorney was received as an exhibit. The document identifies the charges against the Petitioner and contains a handwritten notation stating "T.E.S. 20 years @ 100%." The document also reflects that Count 5, employing a firearm during commission of a dangerous felony, is crossed out and "Dismissed" is written beside it. Another notation reads, "D.A. Won't go Down on Kidnapping charge."

The Petitioner testified at the post-conviction hearing that he did not testify at the trial because trial counsel told him "it wouldn't be a good idea for me to testify." The Petitioner stated that had he testified, he would have told the jury what occurred that night and expressed his remorse. The Petitioner said that he discussed a motion to sever with his first attorney but that he did not discuss it with trial counsel because codefendant White filed a similar motion, and it was denied.

-4-

On cross-examination, the Petitioner testified that he would have accepted the January 20 plea offer had he known about it. He explained that he rejected the offer communicated to him because the plea cutoff date had passed and the trial date was near.

The Petitioner testified that contrary to his police statement, another person did not send him to rob the victims and that he was not affiliated with a gang. The Petitioner stated that he added facts to his version of events during the police interview because at the time he had other pending charges and because the police were "forcing me to do a lot of things."

The Petitioner testified that he and his codefendants went to the apartment armed with two firearms because it was a "drug deal gone bad[.]" The Petitioner said that the male victim sold the Petitioner "rabbit food" instead of marijuana and that after he realized it was not marijuana, he returned to the apartment complex with his codefendants to obtain a refund or authentic marijuana. The Petitioner stated codefendant Clark carried a pistol, the Petitioner carried an SKS rifle, and codefendant White restrained the male victim in a chair using tape. The Petitioner stated that he did not strike the male victim with the rifle. The Petitioner said that he did not take any money from the victims or receive money from the codefendants because the Petitioner was arrested immediately after this incident.

The Petitioner testified that he did not have permission to enter the apartment and that he forced the victims to enter the apartment with him. He said that the female victim told the three of them she had money at another location and that his codefendants left with her to retrieve the money. The Petitioner stated that the female victim suggested leaving the apartment and that he stayed with the male victim. The Petitioner said that he did not "ransack" the apartment in search of marijuana and that he did not see his codefendants ransack the apartment.

The Petitioner testified that the trial court judge informed him of his right to testify and that based on trial counsel's advice, the Petitioner signed a document waiving his right to testify. He said that he chose not to testify but that it was not "intelligent." He stated that he "couldn't have chose[n] the other way." The Petitioner stated that his choice not to accept the plea offer was "a free choice."

On redirect examination, the Petitioner testified that relative to the plea offer conveyed by trial counsel, counsel advised he would receive a twenty-five year sentence at the trial and that proceeding to trial "was a good idea." The Petitioner said that his trial testimony would have explained

> to the jury that I was sold some rabbit food, and all I did was to come back for
> either my money or for my marijuana. And I understand that I can't take the

law into my own hands, but at that time I was 18 . . . [and] that's what I was going to do. I didn't decide to say, hey, I'm fixing to go rob somebody.

Trial counsel testified that he had handled more than 100 criminal cases as a private attorney and as an assistant district public defender. He said that he was appointed to the Petitioner's case when the Petitioner's first attorney was transferred to a different division. Counsel stated that the first attorney filed a discovery motion, that the prosecutor's office had an open-file policy, and that counsel reviewed the discovery file. Counsel said that he reviewed the discovery file and plea offers with the Petitioner. Counsel recalled that he discussed a plea offer with the Petitioner on the morning of the trial and that the Petitioner rejected the offer.

Trial counsel testified that the trial judge conducted a hearing pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), and informed the Petitioner of his right to testify. He said that he and the Petitioner signed a form waiving the Petitioner's right to testify. Counsel did not remember discussing with the Petitioner whether the Petitioner wanted to testify, but counsel stated that based upon the Petitioner's statement to the police and counsel's common practice, counsel would have advised the Petitioner not to testify because the testimony would have corroborated the State's evidence.

On cross-examination, trial counsel testified that upon his appointment to this case, he spoke with the Petitioner's first attorney, met with the Petitioner, and discussed the case with the prosecutor. He said that the case file contained a copy of a plea offer "and it was my understanding that [it] had been discussed with" the Petitioner. Counsel remembered discussing the January 20 offer with the Petitioner "a few days prior" to the trial but did not know whether he represented the Petitioner before the plea cutoff date. He said that he believed the first attorney wrote the notations on the copy of the plea offer in the case file.

Trial counsel testified that he filed a motion in limine regarding an ongoing case against the Petitioner and that the prosecutor agreed not to introduce statements referring to those allegations. Counsel said that codefendant White filed motions prior to the trial resolving "similar issues that [the Petitioner] would have had" and noted that he did not believe the Petitioner "wanted to go forward with those other issues at that point in time." Counsel stated that he and the Petitioner did not discuss a motion to sever and that codefendant White's motion to sever had been denied prior to counsel's involvement with the case. Counsel said he felt another motion to sever would have been repetitive of the codefendant's motion and would have been denied, but he did not remember whether he discussed it with the Petitioner.

Trial counsel testified that generally he advised clients of their right to testify and informed them of issues regarding cross-examination but that he told every client "ultimately,

it's your decision." He said the Petitioner did not wish to testify. Counsel stated that he represented the Petitioner on appeal and did not raise issues relative to the trial court's denying codefendant White's motion to sever because counsel had not filed that motion.

On redirect examination, trial counsel testified that he did not file a pretrial motion to dismiss the kidnapping charge of the female victim. He said that in his opinion and under the law, the Petitioner was criminally responsible for his codefendants' actions after they removed the female victim from the apartment. Counsel stated that severing the trials would not have eliminated any count of the indictment and that the evidence presented by the State would have been identical in each trial. Counsel said that when he and the Petitioner discussed the plea offer on the day of the trial, the Petitioner indicated to him "that if he was going to get that much time, that they might as well put him [in prison] for the rest of his life."

The Petitioner's first attorney testified that she filed a motion for discovery and obtained a copy of the prosecutor's file. She said that she discussed a plea offer with the Petitioner on February 27, 2012, and that the offer expired on April 9. She stated that she and the prosecutor discussed the offer further, that the Petitioner requested a copy of the discovery file, and that the January 20 plea offer would have been in the discovery file when the Petitioner received it. She said that she discussed the January 20 offer with the Petitioner and that he rejected it.

On cross-examination, the Petitioner's first attorney testified that she did not file any additional motions. She did not remember when codefendant White filed a motion to sever and said the case file would reflect if she had been present at the hearing on the motion.

The post-conviction court denied relief. Regarding the January 20 plea offer, the court credited the testimony of Petitioner's first attorney and trial counsel and found that offers, including the January 20 offer, were discussed "very thoroughly" with the Petitioner "on more than one occasion, even as recently as two days prior to the trial" and that the Petitioner rejected the offers. The court noted the Petitioner's testimony that he had discussed a plea offer with counsel two or three days before trial and rejected it.

Regarding the Petitioner's right to testify, the post-conviction court found that based upon the Petitioner's testimony at the hearing and the trial court record, the Petitioner was thoroughly questioned under oath regarding whether he wanted to testify and the advantages and the disadvantages of his decision. The court found that the Petitioner made a strategic decision not to testify. The court also found that the Petitioner testified at the post-conviction hearing relative to the substance of his proposed trial testimony and that nothing in the offered testimony exonerated the Petitioner.

Regarding the motion to sever, the post-conviction court found that the State agreed not to introduce statements of the codefendants, removing the necessity for the motion, and that apart from these statements "no specific factual or legal reason was presented" at the post-conviction hearing for a motion to sever. The court noted that had the codefendants's cases been severed, the trial court would have been required to instruct the juries on facilitation and criminal responsibility for the conduct of another. The post-conviction court found that counsel was not deficient and that the Petitioner had failed to establish prejudice.

On appeal, the Petitioner contends that the post-conviction court erred in denying relief. The State responds that the court properly denied relief.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of

hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.    Plea offer

The Petitioner contends that the post-conviction court erred in crediting the testimony of his first attorney and trial counsel and in discrediting the Petitioner's testimony. The State responds that the court's factual findings and credibility determinations do not preponderate against the evidence and should not be disturbed. We agree with the State.

The post-conviction court credited the testimony of the Petitioner's first attorney and trial counsel relative to the plea offers and found that all plea offers were communicated to and discussed with the Petitioner. The Petitioner testified that an offer was communicated to him one or two days before the trial, and the court discredited the Petitioner's assertion that he was not informed of the January 20 offer. The Petitioner's first attorney testified that she discussed the January 20 offer with the Petitioner and that he rejected it. Trial counsel testified that he discussed the January 20 offer with the Petitioner but did not remember whether he represented the Petitioner prior to the offer's expiration. The evidence presented at the post-conviction hearing does not preponderate against the court's finding that the Petitioner was informed of all plea offers and chose to reject them. We conclude that the Petitioner failed to show deficient performance and prejudice. The Petitioner is not entitled to relief on this basis.

## B.    Right to Testify

The Defendant contends that his decision not to testify at the trial was unknowing, involuntary, and unintelligent because trial counsel did not explain fully the right to testify. The State responds that the Petitioner was examined by the trial court during a *Momon* colloquy in which he was adequately advised of his rights. We agree with the State.

The Petitioner's testified at the post-conviction hearing that the trial judge questioned him regarding his right to testify and that the Petitioner chose not to testify based on trial counsel's advice. Counsel's credited testimony reflects that counsel was present for the

*Momon* colloquy and that although he could not remember a specific conversation, counsel would have advised the Petitioner not to testify because the Petitioner's testimony would have corroborated the State's evidence. Relative to prejudice, the post-conviction court found that the Petitioner's testimony was offered at the post-conviction hearing and would not have exonerated him.

The evidence does not preponderate against the post-conviction court's findings that the Petitioner was advised of his right to testify and knowingly and intelligently waived his right to testify. The Petitioner failed to show deficient performance and prejudice. The Petitioner is not entitled to relief on this basis.

## C. Motion to Sever

The Petitioner contends that because he did not participate in the female victim's removal from the apartment, trial counsel should have filed a motion to sever in order to achieve a fair trial. The State responds that the decision not to file a motion to sever was tactical and did not reflect deficient performance and that the Petitioner was not prejudiced because the State's evidence would have remained the same in a separate trial. We agree with the State.

The record reflects that codefendant White filed a motion to sever the trials based upon statements made by the codefendants and that it was denied. Trial counsel's credited testimony reflects that he made a tactical decision based on adequate preparation not to file an identical motion to sever on the Petitioner's behalf because it would have been duplicative of codefendant White's motion. Relative to a motion to sever based upon the codefendants's kidnapping of the female victim, counsel testified that had the trials been conducted separately, the trial court would have instructed the juries on criminal responsibility. Further, counsel opined that under the law, the Petitioner was criminally responsible for the actions of codefendants White and Clark, including those that took place out of the Petitioner's presence. Counsel made a tactical decision not to file the motion because there was no legal basis to sever the trial. The Petitioner has failed to establish deficient performance in this regard.

Further, the post-conviction court found that the Petitioner presented no evidence explaining why a motion to sever would have been successful if counsel had filed it. The record reflects that the State would have presented identical evidence against the Petitioner in a separate trial and that no count of the indictment would have been dismissed as a result of a severance. The Defendant has not proven that any legal basis for a severance existed or that a separate trial would have yielded a different result. The evidence does not preponderate against the post-conviction court's finding that there was no basis upon which a motion to

sever could have succeeded. The Petitioner likewise has failed to establish prejudice and is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE